**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANDREW WELSH, *individually, and on behalf of all others similarly situated,*

Plaintiff,

v.

CASE NO.:

UCF HOTEL VENTURE V d/b/a Endless Summer Resort – Surfside Inn and Suites, *a Florida general partnership*, by and through its general partners, LOHP V, LLC, *a Delaware limited liability company*, and UNIVERSAL STUDIOS HOTEL V, LLC, *a Delaware limited liability company*, and LOEWS HOTELS HOLDING CORP., *a Delaware corporation*, d/b/a Loews Hotels & Co.

Defendants.
_____________________________________/

**CLASS ACTION COMPLAINT**

Plaintiff, ANDREW WELSH (hereinafter "Plaintiff"), *individually, and on behalf of all others similarly situated*, sues Defendants, UCF HOTEL VENTURE V d/b/a Endless Summer Resort – Surfside Inn and Suites, *by and through its general partners*, LOHP V, LLC, and UNIVERSAL STUDIOS HOTEL V, LLC (collectively "UCF Hotel") and LOEWS HOTELS HOLDING CORP. d/b/a Loews Hotels & Co. (hereinafter "Loews Hotels")(Loews Hotels and UCF Hotel are referred to collectively as "Defendants") for injunctive relief, compensatory damages, punitive damages, attorneys' fees, and litigation costs, including but not limited to disbursements, court expenses, and other costs, pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. §760.01, *et. seq.*, and alleges:

## PARTIES

1. At all times material hereto, Plaintiff, Andrew Welsh ("Plaintiff"), was and is over the age of 18 years, *sui juris*, and a resident and citizen of the State of Pennsylvania.

2. Plaintiff has at all times suffered from a "qualified disability" under the ADA.[1] Plaintiff was born with Spastic Triplegic Cerebral Palsy. He is severely disabled, cannot walk, and must use a large electric wheelchair for mobility purposes.

3. At all times material, Loews Hotels was and is a Delaware corporation, headquartered at 9 West 57th St., New York, NY 10019.

4. At all times material, UCF Hotel was and is a Florida general partnership, with two general partners: (i) LOHP V, LLC, which is located within Loews Hotels' headquarters, 9 West 57th St., New York, NY 10019; and (ii) Universal Studios Hotel V, LLC, with one or more members located, on information and belief, at 30 Rockefeller Plaza, New York, NY 10112.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the individual claims between Plaintiff and Defendants pursuant to 28 U.S.C. §1332(a)(1), because the action is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. This Court has subject matter subject matter jurisdiction over the class claims herein pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2). The amount in controversy exceeds Five Million Dollars ($5,000,000.00), exclusive of interest and costs. There are more than 100 putative class members.

[1] Americans with Disabilities Act of 1990, 42 *U.S.C. § 12101, et. seq.*

7. This Court has personal jurisdiction over Defendants, and venue lies in this District, because Loews Hotels is headquartered and doing business in this District, and UCF Hotel is a general partnership, sued by and through its general partners, who are located and doing business in this District.

**FACTS**

8. Defendants own and/or operate the Loews Universal Endless Summer Surfside Inn and Suites, located at 7000 Universal Blvd in Orlando, Florida (the "Surfside Inn").

9. In addition to the Surfside Inn, Loews Hotels owns and/or operates the following hotels at Universal Studios, in Orlando, Florida:

a. Dockside Inn and Suites, 7125 Universal Blvd Orlando, FL
b. Hard Rock Hotel at Universal Orlando, 5800 Universal Boulevard, Orlando, FL
c. Loews Portofino Bay Hotel, 5601 Universal Boulevard Orlando, FL
d. Loews Royal Pacific Resort, 6300 Hollywood Way, Orlando, FL
e. Loews Sapphire Falls Resort, 6601 Adventure Way, Orlando, FL
f. Universal Aventura Hotel, 6725 Adventure Way, Orlando, FL
g. Universal Helios Grand Hotel, 8505 S Kirkman Road Orlando, FL
h. Universal Stella Nova Resort, 4500 Epic Boulevard, Orlando, FL
i. Universal Terra Luna Resort, 5500 Epic Boulevard, Orlando, FL

10. The hotels listed in the prior Paragraph, along with the Surfside Inn, are referred to collectively herein as the "Universal Hotels."

11. Loews Hotels' parent corporation explains within its most recent letter to shareholders that Loews Hotels' portfolio of hotels (which includes the Universal Hotels) differentiates itself through Loews' role as both owner *and* operator. Likewise, Loews Hotels' website (www.loewshotels.com) explains that Loews Hotels & Co. "owns and/or operates" its portfolio of hotels (including the Universal Hotels) and takes pride "in every detail" and "each moment of your stay" from "the moment you arrive."

12. Loews Hotels' website also makes clear that it operates accessibility compliance at each of its hotels (including the Universal Hotels) by providing a phone number on its website to

call "[if] you need any special services or accommodations at one of our hotels because of a disability or require accessibility information about any of our hotels."

13. These are limited examples of innumerable representations made on Loews Hotels' website, and in public disclosures, confirming Loews Hotels' status as owner and/or operator of the Universal Hotels, including the Surfside Inn.

14. UCF Hotel is registered with the Florida Secretary of State as doing business as the Surfside Inn and holds the Florida Department of Business and Professional Regulation hospitality license for the Surfside Inn. UCF Hotel is a general partnership between Universal Studios and LOHP (Loews Orlando Hotel Properties).

15. On October 1, 1992, Florida enacted the Florida Civil Rights Act ("FCRA"), to secure freedom from discrimination for individuals based on race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status. *See Fla. Stat. §760.01-760.11*.

16. "On the breadth of rights protected by the FCRA, the Florida appellate courts have made it clear: the FCRA is to be construed in conformity with the ADA and the FCRA should therefore apply to disability discrimination claims the same way the ADA applies to similar federal claims." Giambrone v. Kearney & Co., P.C., 2016 U.S. Dist. LEXIS 130142 (M.D. Fla. 2016) *citing* (*inter alia*); Green v. Seminole Elec. Co-op. Inc., 701 So. 2d 646, 647 (Fla. 5th DCA 1997) (finding that the FCRA must be construed in conformity with the ADA); Lenard v. A.L.P.H.A. "A Beginning", Inc., 945 So. 2d 618 (Fla. 2nd DCA 2006) ("courts construe the FCRA in conformity with the federal Americans with Disabilities Act").

17. Pursuant to the mandates of 42 U.S.C. §12134(a), on September 15, 2010, the Department of Justice, Office of the Attorney General ("DOJ"), published revised regulations for Title III of the ADA, otherwise known as the 2010 ADAAG. *28 C.F.R. Part 36*.

18. On March 15, 2012, the 2010 ADAAG took effect, imposing significant new obligations on reservations systems of inns, motels, hotels and other "places of lodging." 28 C.F.R. §36.302(e)(l) provides, in pertinent part, that:

> Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party . . .
>
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
>
> (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

*28 C.F.R. §36.302(e)(l)(iv)-(v)*

19. In promulgating these requirements, the DOJ made clear that it is critically importance for disabled guests to evaluate and reserve accessible rooms that work for their accessibility needs, explaining:

> hotel rooms that are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features – in new and existing facilities – are included in the hotel's accessible guest rooms.

*28 C.F.R. Part 36, Appx. A.*

20. Rooms that are accessible or ADA complaint are not "one size fits all" for the disabled, since rooms in full compliance with the ADA may differ from one another, and this "may mean the difference between a room that is usable by a particular person with a disability and one that is not." *28 C.F.R. Part 36, Appx. A.*

21. These rules are critically important. A person with disabilities cannot simply "roll with the punches" when the needed and reserved accessible room is illegally given away to someone else prior to arrival of the reversing disabled guest. As the DOJ has explained:

> Each year the Department receives many complaints concerning failed reservations. Most of these complaints involve individuals who have reserved an accessible hotel room only to discover upon arrival that the room they reserved is [] not available . . . several commenters pointed out the importance of knowing the size [of] a room . . . there may be only one [accessible] room in a given hotel that meets a guest's needs.

*https://archive.ada.gov/regs2010/titleIII_2010/titleIII_2010_regulations.htm#a2010guidance*

22. The DOJ has further explained that to comply with non-discrimination requirements for disabled guests, the specific accessible ***room type*** reserved must be held for the reserving guest; explaining that "[m]any hotels already have a similar process in place for other guest rooms that are unique or one-of-a-kind, such as 'Presidential' suites." Accordingly, a hotel:

> [M]ust provide the same guarantee for accessible guest rooms as it makes for other rooms, except that it must apply that guarantee to the specific room reserved and blocked[.]

*https://archive.ada.gov/regs2010/titleIII_2010/titleIII_2010_regulations.htm#a2010guidance*

23. The Universal Hotels are places of lodging owned and/or operated by Loews Hotels. UCF Hotel is an additional owner and/or operator of the Surfside Inn.

24. Plaintiff's parents planned a family trip for June 17–22, 2025 (including their children and grandchildren, who all live together as a family unit, to assist with Plaintiff's care) to Universal Studios, in Orlando, Florida.

25. The purpose of the trip was to do a "dry run" for a larger trip to Hawaii the following year (for Plaintiff's parents' 40th wedding anniversary), thus allowing Plaintiff to experience a shorter trip, in which he could be assured that with the right accessible room, he would be able to

stay away from home in safety and comfortably, and to thus put Plaintiff more at ease about traveling in general, and in particular, traveling to Hawaii the following year.

26. Plaintiff is severely disabled and needs very particular room features. He is also a 36-year-old man, who cannot stay alone, and must therefore share space with his parents. After researching the available accessible room options at the Surfside Inn, Plaintiff's party selected and booked the "Mobility Accessible 2 Bedroom Suite w/ roll-in shower."

27. This accessible suite was selected for multiple reasons. First, Plaintiff cannot toilet or shower himself without accessible bathroom features, including grab bars. As such, accessible features in the bathroom were needed. In addition, Plaintiff needs the clear floor space provided by a large suite; specifically, because he has a large, motorized wheelchair, he requires the additional floor space to maneuver freely inside a hotel room. Finally, as an ancillary matter, because he is an adult and needs his parents as caregivers, a two-bedroom suite provides everyone the privacy needed to stay comfortably (without which a hotel stay would not be feasible).

28. The "Mobility Accessible 2 Bedroom Suite w/ roll-in shower" was reserved, *was pre-paid in advance*, and the reservation was confirmed in writing.

29. Even though the reserved accessible suite was paid and confirmed, because it was so critical go get the specific suite that was reserved, Plaintiff's mother called the Surfside Inn multiple times leading up to the trip, including on the day of the trip (just prior to boarding the airplane), to confirm and re-confirm that the specific reserved accessible suite was being held. Plaintiff's mother was repeatedly assured that the reserved accessible suite was secure.

30. Upon arrival at the Surfside Inn, Plaintiff and his party were informed that their reserved accessible suite was given away to another party and was no longer available.

31. The Rooms Controller at the Surfside Inn has now testified:

> On June 17, 2025, I was working at the hotel in my capacity as Rooms Controller. On or around 10:29 PM that evening, the Welsh family presented to the hotel and checked-in. Prior to their arrival, I observed that the Welsh's reservation had been changed because the suite they originally requested was no longer available due to another guest requesting a suite with a mobility shower.

32. It is therefore undisputed that the accessible suite that was reserved and pre-paid and confirmed and re-confirmed by Plaintiff's party was given away to another guest prior to Plaintiff's arrival, and that the Surfside Inn unilaterally changed the accessible suite reservation. Standing alone, this conduct violates 28 C.F.R. §36.302(e)(l)(iv)-(v), which required that the reserved accessible suite be removed and blocked from all reservations systems, and guaranteed upon Plaintiff's arrival.[2]

33. Plaintiff and his parents were then placed into a non-accessible suite, with no accessibility features, no grab bars, no roll-in shower, and no ADA compliant toilet. It was therefore impossible for Plaintiff to use the bathroom or shower.

34. Shortly after entering the non-accessible room, Plaintiff had to urinate, and his father was required to physically assist Plaintiff to urinate in the non-accessible toilet. This was traumatic and humiliating for both men, but particularly for Plaintiff, who performs toileting tasks independently and with dignity, but needs a toilet with standard accessibility features to do so.

35. At this point, Plaintiff broke down into tears. He was unsure how he could use the toilet at night, and offered to urinate on himself, and to wait for the morning to be cleaned. Plaintiff's father refused that suggestion and insisted on physically assisting again if needed. Plaintiff then begged his family to please get him home immediately, and his father researched how to do so, but the logistics proved impossible that night.

---

[2] Records in this case show that people who took, changed, and handled the reservation at issue in this case, including the Rooms Controller, had email addresses at the URL www.loweshotels.com, which is Loews Hotels' website, and publicly identify themselves as employees of Loews Hotels & Co.

36. The next morning, Plaintiff's father met with the Front Desk Manager, who deflected responsibility, and refused to provide the General Manager's name. After an argument over whether Plaintiff's father could speak to the General Manager, and after repeated insistence that Plaintiff needed an accessible suite, Defendant's agents finally placed Plaintiff's party into the accessible suite that they reserved.

37. Plaintiff remained traumatized by the experience of needing his father's physical help to urinate, and refused to leave the suite, refused to come to any of the Universal Studios parks (despite having a prepaid ticket and "fast pass"), and continued to feel unsafe and insecure in his environment. Plaintiff's father stayed behind with him at the hotel to provide comfort and support while the rest of the family went to the parks.

38. As a result of this incident, Plaintiff no longer feels safe or secure traveling away from home and has become more isolated. He has requested to be excluded from the family's upcoming Hawaii trip. His wishes have been honored, and Plaintiff's brother will also miss the trip, to remain home with Plaintiff, while the rest of the family go to Hawaii for the family's planned anniversary trip.

39. On July 11, 2025, Plaintiff filed a Charge of Discrimination against the Surfside Inn with the Florida Commission on Human Relations ("FCHR"), as a condition precedent to filing a claim under the FCRA.

40. During the subsequent FCHR investigation, Surfside Inn readily admitted that it gave away Plaintiff's reserved and confirmed accessible suite (*see, e.g.,* the Rooms Controller's testimony above), and posited that after doing so, it offered Plaintiff's party the choice of either a

standard-sized accessible room, or a non-accessible suite, and that it therefore has no liability in this case.[3]

41. To support this position, under a heading entitled "Respondent's Policies and Practices," counsel for Surfside Inn explained to an investigator from the FCHR that the "policy and practice" for accessible room reservations is as follows:

> When a guest reserves a room with accessibility features, they are guaranteed to receive a room with accessibility features. However, they may not be placed in the exact room they requested due to Respondent's need to accommodate other guests who make impromptu requests for accessibility features.

42. It is therefore undisputed (and in fact, explained clearly by legal counsel for Surfside Inn) that the Surfside Inn is operated according to a reservations "policy and practice" of <u>not removing and blocking</u> reserved accessible rooms from reservations systems and <u>not guaranteeing</u> that, at the time of check-in, a disabled guest will receive the accessible room that was reserved.

43. Following its six (6) month investigation into the facts of this case, the FCHR determined that there is reasonable cause to conclude that Plaintiff was discriminated against. As set forth by Office of Chief Legal Counsel, all the purportedly "legitimate, non-discriminatory reasons proffered" by Surfside Inn to controvert Plaintiff's allegations of discrimination were "pretextual for unlawful discrimination."

44. As such, all conditions precedent to filing this FCRA claim have been met.

---

[3] Plaintiff disputes that a standard sized accessible room was ever offered. At least three eyewitnesses will dispute this claim. But in any event, a standard-sized accessible room would not have met Plaintiff's accessibility needs, because of his large, motorized wheelchair. It is neither lawful, nor decent, nor ethical, to give away a specific type of reserved and paid-for accessible room (which Plaintiff's mother had called to confirm and reconfirm repeatedly), and then put a disabled person in the position of choosing between a room that has the needed physical floor space or a room with a useable toilet. Yet incredibly, this was the (false) version of events that the Surfside Inn believed to be exculpatory in this case.

## CLASS ALLEGATIONS

45. Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to assert claims on behalf of all similarly situated persons, as follows:

> All persons who reserved an accessible guestroom at any of the Universal Hotels at any time during the three-year period prior to the filing of this action (the "FCRA Class").
>
> All persons who reserved an accessible guestroom at the Surfside Inn at any time during the three-year period prior to the filing of this action (the "Surfside Class").

46. Excluded from the FCRA Class and Surfside Class (collectively referred to as the "Class") are any of Defendants' officers, directors, and board members, all persons who make a timely election to be excluded from the Class, and the judges to whom this case is assigned and their immediate family.

47. Plaintiff hereby reserves the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct discovery.

48. The proposed Class meet the criteria for certification under Federal Rule of Civil Procedure 23.

49. Numerosity. The members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff conservatively estimates that the proposed Class is comprised of tens of thousands of individuals.

50. Class members may be identified through objective means because Defendant has recorded the name and other identifying information of each person who reserved an accessible room at any of the Universal Hotels during the relevant period. Class members may thus be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notices.

51. Commonality. Plaintiff and the Class were all subject to discrimination within the meaning of the FCRA by failure to remove and block accessible rooms that were reserved from relevant reservations systems, and failure to guarantee that reserved accessible rooms would be available at the time of check-in, in violation of the FCRA.

52. Plaintiff and the Class are each entitled to payment of compensatory and punitive damages in an amount deemed reasonable by a jury in this case for failure to block out accessible rooms that were reserved, and failure to guarantee that reserved accessible rooms would be available at the time of check-in, in violation of the FCRA.

53. Typicality. Plaintiffs' claims are typical of those of the other Class members. With respect to the failure to comply with 28 C.F.R. §36.302(e)(l)(iv)-(v) and in accordance with the findings of the FCHR, Plaintiff and the Class were all discriminated against within the meaning of Florida Statute §760.11.

54. Adequacy. Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class, and Plaintiff is committed to pursuing this case against Defendants to obtain all available relief. Plaintiff has no conflict of interest with the Class. Plaintiff's counsel is competent and experienced in litigating disability discrimination claims and class action cases.

55. Superiority. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Here, the relief to which Plaintiff and the other members of the Class are entitled includes injunctive relief requiring compliance with relevant laws, and such compensatory and punitive damages as a jury determines to be appropriate to compensate for the discrimination to which each was subjected in this case as a matter of law.

**COUNT I – LOEWS HOTELS**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**FLA. STAT. §760.01, *ET. SEQ.***

56. Plaintiff and the FCRA Class re-aver and re-allege all the allegations set forth above, as though fully set forth herein.

57. All conditions precedent to this action are satisfied. On July 3, 2025, Plaintiff filed a verified Charge of Discrimination with the FCHR in this case. The FCHR investigated over a six (6) month period, ultimately issuing a determination of reasonable cause that a discriminatory practice has occurred in this case.

58. The Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §760.01, *et. seq*. exists "to secure for all individuals within the state freedom from discrimination because of . . . handicap . . . and thereby to protect their interest in personal dignity . . . and to promote the interests, rights, and privileges of individuals within the state." *Fla. Stat. §760.01(2).*

59. Pursuant to the FCRA, "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion." *Fla. Stat. §760.08.*

60. The FCRA "shall be liberally construed to further the general purposes stated" therein. *Fla. Stat. §760.01(3)*.

61. The FCRA is construed in conformity with the ADA.

62. The level of control exercised by Loews Hotels over each of the Universal Hotels, including but not limited to the Surfside Inn, extends, without limitation, to owning and/or operating all of the Universal Hotels, providing employees of the Universal Hotels with email addresses @loewshotels.com, branding each of the Universal Hotels as a Loews hotel, taking public credit for every facet of the guest experience at each of the Universal Hotels (including

accessibility issues), having the employees of the Universal Hotels hold themselves out as working for "Loews Hotels & Co.," and operating a centralized reservation system for all of the Universal Hotels. These facts put Loews Hotels squarely within the definition of liable parties under the ADA and FCRA for the discriminatory reservation system failures in this case.

63. On information and belief, Surfside Inn is operated by Loews Hotels, including its reservations policies and procedures, in a manner consistent with Loews' Hotels' operation of all the other Universal Hotels.

64. It is undisputed (and in fact, was disclosed and established by counsel for Surfside Inn) that the reservations policy and procedure at the Surfside Inn does not "ensure that the guest rooms requested are blocked and removed from all reservations systems" and does not "guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer." On information and belief, these discriminatory reservations policies and procedures are not isolated to Surfside Inn and are consistent across all Universal Hotels.

65. Plaintiff and the FCRA Class each suffered discrimination as defined by the FCRA, because each reserved (or had reserved) an accessible room at a Universal Hotel owned and/or operated by Loews Hotels, which did not remove and block the reserved accessible room from all reservations systems, and did not guarantee that the reserved accessible room would be available at the time of check-in.

66. The discriminatory misconduct described herein caused Plaintiff severe damage, including physical humiliation, increased loss of independence, increased isolation, and other such damages as may be demonstrated to a jury at trial.

67. Pursuant to Fla. Stat. §760.11(5), Plaintiff and each member of the FCRA Class is entitled to compensatory damages resulting from their exposure to Loews Hotels' discriminatory reservations policy and practice, in an amount to be determined by a jury at trial.

68. In addition, pursuant to Fla. Stat. §760.11(5), Plaintiff and *each member* of the FCRA Class is entitled to an award of $100,000.00 *per person*, in punitive damages, intended to punish Loews Hotels for its discriminatory reservations policy and practice.

69. Pursuant to Fla. Stat. §760.11(5), Plaintiff and each member of the FCRA Class is entitled to an order prohibiting the discriminatory policy and practice at issue and requiring that Loews Hotels conform its reservation policy and practice to comport with federal and Florida law.

WHEREFORE, Plaintiff and the FCRA Class respectfully request that this Court:

(a) certify the FCRA Class as defined above, comprised of all persons who reserved an accessible room at any of the Universal Hotels during the prior three-year period;

(b) award Plaintiff, and every member of the FCRA Class, a declaration that Loews Hotels' reservations system, through which it is and has been taking reservation for the Universal Hotels, is and has been operated is in violation of the FCRA;

(c) award Plaintiff and the FCRA Class permanent injunctive relief enjoining Loews Hotels from continuing its discriminatory practices, including the requirement that Loews Hotels permanently implement policies, practices, and procedures, compliant with 28 C.F.R. §36.302(e)(l) across all Universal Hotels;

(d) award Plaintiff and the FCRA Class permanent injunctive relief enjoining Loews Hotels from maintaining or taking any reservations for any Universal Hotel until such time as its reservation policies and practices fully comply with 28 C.F.R. §36.302(e)(l);

(e) Award Plaintiff an incentive fee for bringing this class action on behalf of the FCRA Class;

(f) Award all reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, pursuant to Fla. Stat. §760.11;

(f) Award to Plaintiff, and *each member* of the FCRA Class, compensatory damages deemed just and equitable as compensatory payment for damages incurred by reason of Loews Hotels' FCRA violations in this case;

(g) Award to Plaintiff, and *each member* of the FCRA Class, punitive damages in the amount of up to One Hundred Thousand Dollars ($100,000.00) *per person*; and

(g) Award such other and further relief as this Court deems just, necessary and appropriate under the circumstances presented.

**COUNT II – UCF HOTEL**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**FLA. STAT. §760.01, *ET. SEQ.***

70. Plaintiff and the UCF Class re-aver and re-allege all the allegations set forth above, as though fully set forth herein.

71. Loews and Universal own multiple Loews-branded hotels at Universal Studios in Orlando, Florida. Technical ownership and licensing of each such hotel is through a limited purpose general partnership formed to isolate hotel ownership for risk management and other lawful purposes.

72. Surfside Inn is owned, and licensed to operate, through one of these limited purpose general partnerships; to wit, UCF HOTEL VENTURE V d/b/a Endless Summer Resort – Surfside Inn and Suites, the general partners of which are Loews (through LOHP V, LLC) and NBC Universal (through UNIVERSAL STUDIOS HOTEL V, LLC).

73. On information and belief, UCF HOTEL VENTURE V is the W2 employer for some or all employees at Surfside Inn, but those employees operate the Surfside Inn pursuant to Lowes Hotels policies and procedures, operate within the Loews Hotels centralized reservations system, communicate professionally using @loweshotels email addresses, hold themselves out as

employees of Loews Hotels & Co., and are ultimately subject to decisions or orders originating with superiors employed by Loews Hotels (or by other Loews Hotels-controlled entities).

74. As the owner of the Surfside Inn, as the licensee licensed to operate the Surfside Inn, and as the W2 employer of some or all the individuals who executed the discriminatory reservations policy and procedure described herein, UCF Hotel is liable for the FCRA violations in this case.

75. Plaintiff and the Surfside Class each suffered discrimination under the FCRA, because each of them reserved (or had reserved) an accessible room at Surfside Inn, which UCF Hotel did not remove or block from all reservations systems, and did not guarantee to be available at check-in.

76. The discriminatory misconduct described herein caused Plaintiff severe damage, including physical humiliation, increased loss of independence, increased isolation, and other such damage as may be demonstrated to a jury at trial.

77. Pursuant to Fla. Stat. §760.11(5), Plaintiff and each member of the Surfside Class is entitled to compensatory damages resulting from their exposure to UCF Hotels' discriminatory reservations policy and practice, in an amount to be determined by a jury at trial.

78. In addition, pursuant to Fla. Stat. §760.11(5), Plaintiff and *each member* of the Surfside Class is entitled to an award of $100,000.00 *per person*, in punitive damages, intended to punish UCF Hotels for its discriminatory reservations policy and practice.

79. Pursuant to Fla. Stat. §760.11(5), Plaintiff and each member of the Surfside Class is entitled to an order prohibiting the discriminatory policy and practice at issue and requiring that UCF Hotels conform its reservation policy and practice to comport with federal and Florida law.

WHEREFORE, Plaintiff and the Surfside Class respectfully request that this Court:

(a) certify the Surfside Class as defined above, comprised of all persons who reserved an accessible room at the Surfside Inn during the prior three-year period;

(b) award Plaintiff, and every member of the Surfside Class, a declaration that UCF Hotel has been taking reservations for accessible rooms at Surfside Inn in a manner violative of the FCRA;

(c) award Plaintiff and the Surfside Class permanent injunctive relief enjoining UCF Hotels from continuing its discriminatory practices, including the requirement that UCF Hotels permanently implement policies, practices, procedures, compliant with the FCRA at the Surfside Inn;

(d) award Plaintiff and the Surfside Class permanent injunctive relief enjoining UCF Hotels from maintaining or taking any reservations for the Surfside Inn until such time as its reservations policies and practices fully comply with 28 C.F.R. §36.302(e)(l);

(e) Award Plaintiff an incentive fee for bringing this class action on behalf of the Surfside Class;

(f) Award all reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, pursuant to Fla. Stat. §760.11;

(f) Award to Plaintiff, and *each member* of the FCRA Class, compensatory damages deemed just and equitable as compensatory payment for damages incurred by reason of UCF Hotels' FCRA violations in this case;

(g) Award to Plaintiff, and *each member* of the FCRA Class, punitive damages from UCF Hotel in the amount of up to One Hundred Thousand Dollars ($100,000.00) *per person*; and

(g) Award such other and further relief as this Court deems just, necessary and appropriate under the circumstances presented.

DATED this 28th day of January 2026.

Respectfully Submitted,

**LAW OFFICES OF NOLAN KLEIN, P.A.**
*Attorneys for Plaintiff*
1213 S.E. Third Ave.
Fort Lauderdale, FL 33316
PH: (954) 745-0588

By: *__/s/ Nolan Klein________*
NOLAN KLEIN, ESQUIRE
(NK4223)
klein@nklegal.com
amy@nklegal.com