UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW WELSH,
*individually, and on behalf of all others similarly situated,*

Plaintiff,

-v-

LOPH V, LLC, UNIVERSAL STUDIOS HOTEL V, LLC, and LOEWS HOTELS HOLDING CORP. d/b/a LOEWS HOTELS & CO.

Defendants.

26-CV-742 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Andrew Welsh, individually and on behalf of all others similarly situated, brings this action against Defendants LOPH V, LLC, Universal Studios Hotel V, LLC (together, "Universal"), and Loews Hotels Holding Corp. d/b/a/ Loews Hotels & Co. ("Loews Hotels"), asserting claims under the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq*. Before the Court is Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim or, in the alternative, to transfer venue. For the reasons that follow, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

## I. Background

### A. Factual Background

The following factual allegations are taken from Welsh's complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam).

Welsh is a 36-year-old man born with Spastic Triplegic Cerebral Palsy. (ECF No. 1 ("Compl.") ¶¶ 2, 26.) Though Welsh can perform many tasks independently, he relies on his

parents for assistance and cannot live alone. (*Id.* ¶¶ 26, 34.) He requires accessibility features to use the bathroom and ample floor space to maneuver his motorized wheelchair freely around a room. (*Id.* ¶ 27.)

Sometime in 2025, Welsh and his parents booked a room at Loews Universal Endless Summer Surfside Inn and Suites (the "Surfside Inn"), a hotel owned and operated by Defendants. (*Id.* ¶¶ 8, 24, 26.) The hotel website indicated that it operated an accessible facility and provided a phone number for patrons to request "any special services or accommodations . . . because of a disability." (*Id.* ¶ 12.) Based on their research about available rooms, Welsh and his parents selected the "Mobility Accessible 2 Bedroom Suite w/ roll-in shower," which offered both the accessibility features Welsh required and a separate bedroom for Welsh to "provide[] everyone the privacy needed to stay comfortably." (*Id.* ¶¶ 26-27.) To ensure that Welsh had the proper accommodations, the family paid for the room in advance and received confirmation of their registration in writing. (*Id.* ¶ 28.) In the days leading up to the trip, including just prior to boarding the airplane, Welsh's mother made multiple calls to the Surfside Inn to re-confirm the reservation of that specific room. (*Id.* ¶ 29.)

When Welsh and his parents arrived, the Surfside Inn told them that the room they had booked was no longer available because it had been given away to another guest who requested a suite with a mobility shower. (*Id.* ¶¶ 30-31.) Instead, they were placed in a non-accessible suite, which lacked ADA-compliant toilet features and a roll-in shower. (*Id.* ¶ 33.) (The Surfside Inn maintains that it offered them a standard-sized accessible room or a non-accessible suite. (*Id.* ¶ 40.).) The Surfside Inn's accessibility policy mandates that guests who reserve an accessible room "are guaranteed to receive a room with accessibility features" but notes that guests "may

not be placed in the exact room they requested due to [the hotel's] need to accommodate other guests who make impromptu requests for accessibility features." (*Id.* ¶ 41.)

Soon after entering their assigned room, Welsh required physical assistance from his father to urinate. (*Id.* ¶ 34.) The episode caused Welsh to "br[eak] down into tears." (*Id.* ¶ 35.) Afraid that he would undergo the same ordeal during the night, Welsh proposed that he urinate on himself and wait to be cleaned up in the morning, a plan Welsh's father rejected. (*Id.*) Welsh pleaded with his family to go home that night, but his father determined that doing so was not feasible. (*Id.*)

The following morning, Welsh's father met with the Surfside Inn's Front Desk Manager to request an accessible suite. (*Id.* ¶ 36.) After an argument in which the Front Desk Manager "deflected responsibility" and refused to allow Welsh's father to speak with the General Manager, the hotel staff placed Welsh and his parents in the room they had originally reserved. (*Id.*) Still, Welsh "remained traumatized by the experience" and throughout the rest of the trip he did not leave his suite or partake in any of the Universal attractions. (*Id.* ¶ 37.)

**B. Procedural Background**

On July 11, 2025, Welsh filed a Charge of Discrimination against the Surfside Inn with the Florida Commission on Human Relations ("FCHR"). (*Id.* ¶ 39.) The FCHR investigation found reasonable cause to conclude that the hotel discriminated against Welsh. (*Id.* ¶ 43.)

Welsh commenced this action on January 28, 2026. (*See id.*) Welsh asserts his claims individually and on behalf of all similarly situated persons who either "reserved an accessible guestroom at any of the Universal Hotels at any time during the three-year period prior to the filing of this action (the 'FCRA Class')" or "reserved an accessible guestroom at the Surfside Inn at any time during the three-year period prior to the filing of this action (the 'Surfside Class')." (*Id.* ¶ 45.) The complaint asserts that this Court has subject matter jurisdiction over Welsh's

individual claims based on the complete diversity of citizenship between the parties. (*Id.* ¶ 5 (citing 28 U.S.C. § 1332(a)(1)).) The complaint further asserts that this Court has subject matter jurisdiction over the class claims based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d)(2). (*Id.* ¶ 6.)

On April 7, 2026, Defendants moved to dismiss Welsh's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). (ECF No. 19; *see also* ECF No. 23 ("Mem.").) On May 20, 2026, Welsh filed his opposition to the motion to dismiss. (ECF No. 29 ("Opp.").) Defendants filed their reply on June 15, 2026. (ECF No. 32 ("Reply").)

## II. Legal Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss a case for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss on those grounds, the court "must take all uncontroverted facts in the complaint . . . as true [] and draw all reasonable inferences in favor of the party asserting jurisdiction," *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (cleaned up), and the party asserting jurisdiction must prove by a preponderance of the evidence that it exists, *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

## III. Discussion

Defendants argue that the Court lacks subject matter jurisdiction because complete diversity is absent and the elements of CAFA are not met. (Mem. at 10-13; Reply at 5-6.) The Court addresses each argument in turn.

### A. Diversity Jurisdiction

Federal courts have diversity jurisdiction if the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a). Complete diversity exists if no plaintiff is a citizen of the same state as any defendant. *Id.* Here, as both parties agree, complete diversity is absent. (Opp. at 12; Reply at 5.) Though Welsh pleads in the complaint that he is "a resident and citizen of the State of Pennsylvania" (Compl. ¶ 1), his subsequent briefing admits that he "is currently a citizen of Delaware, not Pennsylvania" (Opp. at 12 n.7),[1] and Defendant Loews Hotels, which is incorporated in Delaware (Compl. ¶ 3), is a citizen of Delaware for diversity jurisdiction purposes. 28 U.S.C. § 1332(c)(1). Accordingly, there is not complete diversity in this case, and this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a).

### B. CAFA

Welsh nevertheless argues that this Court retains subject matter jurisdiction because he raises claims under CAFA. To assert subject matter jurisdiction under CAFA, the complaint must allege "(i) at least one plaintiff and one defendant are citizens of different states; (ii) the putative class contains at least 100 members; and (iii) the amount in controversy exceeds $5,000,000 in the aggregate, not including interest or costs." *Campbell v. Zerocater, Inc.*, No. 23-CV-5742, 2025 WL 964106, at *3 (S.D.N.Y. Mar. 31, 2025) (citing 28 U.S.C. § 1332(d)).

---

[1] As the relevant question for purposes of diversity jurisdiction is where Welsh was a citizen at the time of the complaint's filing (not the opposition brief's), the Court assumes Plaintiff to be clarifying in his opposition brief that he was a citizen of Delaware on January 28, 2026—the date he filed his complaint—given his attribution of his mistake to a "scrivener's error." (Opp at 12 n.7.) But even if Welsh had been a citizen of Pennsylvania on that date, complete diversity would still be lacking because, as Defendants establish, at least one member of one of the LLC Defendants is a citizen of Pennsylvania. (*See* ECF No. 21 ¶¶ 4-6, 8-17.)

Even assuming Welsh pleads the "minimal diversity" required under the first prong, his pleadings on the latter two prongs are insufficient for purposes of CAFA jurisdiction.

**1. Numerosity**

Welsh fails to allege any facts from which the Court can plausibly infer that the putative class is composed of at least 100 members. Although "plaintiffs may make jurisdictional allegations upon information and belief if they have a good faith basis to do so," *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 352 (S.D.N.Y. 2019), the Court may not be "left to speculate whether there are 100 or more putative class members as required by CAFA," *Krasner v. Cedar Realty Tr., Inc.*, No. 22-CV-6945, 2023 WL 3057387, at *3 (E.D.N.Y. Apr. 24, 2023). Yet that is precisely what Welsh leaves the Court to do. His complaint contains only threadbare allegations that "[t]here are more than 100 putative class members" and that "the proposed Class is comprised of tens of thousands of individuals." (Compl. ¶¶ 6, 49.) But Welsh provides no basis—not even information and belief—for these estimates, such as "facts from which it could be plausibly be inferred there are at least 100" class members. *Smith v. Abbott Lab'ys Inc.*, No. 20-CV-5684, 2023 WL 6121798, at *1 (E.D.N.Y. Sep. 19, 2023). And without anything more than conclusory assertions, Welsh's complaint cannot sufficiently demonstrate numerosity. *See Krasner*, 2023 WL 3057387, at *3.

True, the Court may be able to infer from Welsh's proposed class definitions that there are at least 100 guests "who reserved an accessible guestroom at any of the Universal Hotels at any time during the three-year period prior to the filing of this action" and/or "who reserved an accessible guestroom at the Surfside Inn at any time during" the same period. (Compl. ¶ 45 (defining proposed classes).). But to qualify for CAFA jurisdiction, the class action in question must still satisfy the requirements of Federal Rule of Civil Procedure 23 (or a similar state statute). *See* 28 U.S.C. § 1332(d)(1)(B); *cf. Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 216

(2d Cir. 2013) (actions did not qualify as "class actions" under CAFA because they were brought under state statutes that did not "impose[] any of the familiar hallmarks of Rule 23 class actions: namely, adequacy of representation, numerosity, commonality"). Rule 23's commonality prong, which provides that the plaintiff must share "questions of law or fact common to the class," Fed. R. Civ. P. 23(a), "requires that the class members have suffered the same injury." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011) (quotation marks omitted). Welsh's proposed class definitions do not capture any injury at all (let alone his specific one), nor does he offer any pleadings that identify other guests whose accessible room reservations were not honored or explain how often Defendants give away previously reserved accessible rooms. Absent allegations like these, the Court cannot infer that there are at least 100 others similarly situated to Welsh. He thus fails to satisfy CAFA's first jurisdictional prong.

**2. Amount in Controversy**

Welsh also fails to offer allegations sufficient to satisfy CAFA's amount-in-controversy requirement. Where, as here, "the aggregate amount in controversy is not obvious from the face of the complaint, the party invoking jurisdiction under CAFA must show . . . that there is a 'reasonable probability' that the amount in controversy meets the threshold of $5,000,000." *Campbell*, 2025 WL 964106, at *4 (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006)). A mere "conclusory assertion that the aggregate amount in controversy exceeds $5,000,000" is "insufficient to satisfy the CAFA amount in controversy requirement." *Id.* (collecting cases). Yet, again, that is all Welsh offers here. The complaint simply states that that "[t]he amount in controversy exceeds Five Million Dollars ($5,000,000.00)" and "each member of the Surfside Class is entitled to an award of $100,000.00 per person." (Compl. ¶¶ 6, 78 (emphasis omitted).) Although "[c]ourts can consider other evidence in the record when evaluating a pleading that inconclusively invokes the [CAFA] amount-in-controversy

requirement," *Snyder v. Dale*, No. 24-CV-8940, 2025 WL 3034936, at *4 (S.D.N.Y. Oct. 30, 2025) (quotation marks omitted), there is no such additional evidence here. The complaint is devoid of factual pleadings that plausibly allege the amount in controversy exceeds $5,000,000. Accordingly, this Court does not have subject matter jurisdiction over this case under CAFA.[2]

**IV. Leave to Amend**

Lastly, the Court considers whether to grant leave to amend. Although Federal Rule of Civil Procedure 15(a)(2) provides that a court should grant leave to amend "when justice so requires," the court nonetheless has "sound discretion" to grant or deny leave. *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). "Leave may be denied where, as here, a plaintiff does not request to amend his pleading." *Barker v. Bancorp, Inc.*, No. 21-CV-869, 2022 WL 595954, at *14 (S.D.N.Y. Feb. 25, 2022); *see also Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made"). While Welsh indicates that he "could (and if required, will) amend as a matter of right" in his opposition (Opp. at 12), that is not a request for leave to amend. Instead, it is inaccurate statement of his rights under Rule 15, since any 21-day period for him to have amended his complaint as a matter of course has since expired. As Welsh has "declined to take advantage of previous opportunities to amend [his] Complaint[]," *Barker*, 2022 WL 595954, at *14, and has failed to actually request leave to amend from this Court, the Court declines to *sua sponte* grant him leave to amend his complaint.

[2] Because the Court must determine whether it has subject matter jurisdiction before reaching the merits of Welsh's claims, *see Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), the Court expresses no view in this opinion as to Defendants' remaining arguments for dismissal and motion to transfer venue.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 19, enter judgment of dismissal without prejudice for lack of subject matter jurisdiction, and close this case.

SO ORDERED.

Dated: November 6, 2026
New York, New York

J. PAUL OETKEN
United States District Judge